IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| CHRISTIAN SIGALA, *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Case No.: GJH-15-1779 |
| ABR OF VA, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# MEMORANDUM OPINION

In this putative collective action, Christian Sigala, Juan Jose Flores, and Gabriel Wong (collectively, "Plaintiffs") allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-491 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* Plaintiffs' former employers, ABR of VA, Inc. ("ABR"), William Antonio Chavez, and Erica Alvarez (collectively, "Defendants"), have filed certain state-law counterclaims against Sigala and Flores. Three motions are currently pending before the Court: Defendants' Motion for Default Judgment with respect to their counterclaim, ECF No. 19, Plaintiffs' Motion to Dismiss Defendants' counterclaims, ECF No. 25, and Defendants' Motion for Partial Summary Judgment, ECF No. 26. A hearing on these motions is unnecessary. *See* Local Rule 105.6 (D.Md.). For the following reasons, the Motion for Default Judgment is denied, the Motion to Dismiss is granted, and the Motion for Summary Judgment is denied.

I.     **BACKGROUND**

Plaintiffs, and all similarly situated employees they seek to represent, are current and former employees of ABR, a Virginia corporation whose principal business is the restoration of water-damaged buildings in Maryland, Virginia, and West Virginia. ECF No. 1 at ¶¶ 4, 9. Plaintiffs seek to recover unpaid overtime wages for hours worked in excess of forty hours per week during their employment with ABR. *See id.* at ¶¶ 31–56. Plaintiffs initiated this action on June 17, 2015, and, following the Court's ruling on Defendants' Motions to Dismiss, *see Sigala v. ABR of VA, Inc.*, No. GJH-15-1779, 2015 WL 6773717 (D. Md. Nov. 4, 2015), Defendants filed an Answer to the Complaint on November 17, 2015, in which they alleged several affirmative defenses, as well as multiple counterclaims against Sigala and Flores. ECF No. 16.

In their first counterclaim, Defendants allege a claim of fraud, in which they assert that Flores and Sigala both provided false social security numbers before they began working at ABR, "knew or should have known that they did not have valid social security numbers," and "signed statements indicating that they were legal to work." ECF No. 16 at 12–13.[1] Thus, according to the Counterclaim, they caused "ABR to incorrectly rely on [their] representations and proceed with independent contractor employment." *Id.* at 13. Defendants contend that they are entitled to $50,000 in damages, plus all costs associated with litigating this matter, because Flores and Sigala "[b]oth . . . now seek monetary damages [in their FLSA action], but in fact, were never legal to work and used false numbers to dupe or other[wise] mislead ABR into hiring them." *Id.*

In their second and third counterclaims, Defendants allege that Flores and Sigala, respectively, are liable for certain property damage that occurred when each purportedly caused

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

accidents while they were driving ABR trucks without authorization. *See id.* at 13–14. Defendants further allege that, "[w]hen confronted with the damage, [each] [Plaintiff] quit his job to avoid any possibility of payment . . . ." *Id.* at 14.

After the time elapsed for Sigala and Flores to respond to the counterclaims, Defendants filed a Motion for Default Judgment against them. ECF No. 19. After holding a telephone status conference between the Court and counsel, however, the Court granted Plaintiffs leave to file a late response to the counterclaims. ECF No. 24. Plaintiffs then filed their Motion to Dismiss the counterclaims, arguing that the Court lacks jurisdiction over those claims and that, in any event, the claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6). ECF No. 26. Defendants oppose the Motion to Dismiss. ECF No. 29.

Meanwhile, with respect to Plaintiffs' FLSA action, on January 16, 2016, Defendants filed a Motion for Partial Summary Judgment, ECF No. 26, asking the Court to determine what state law will apply in this case.

## II.  MOTION FOR DEFAULT JUDGMENT

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Choice Hotels Int'l, Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25,2011) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). When ruling on a motion for default judgment, the Court must be mindful of the "strong policy" that, "as a general matter, defaults [are to] be avoided and that claims and defenses [should] be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417–18 (4th Cir. 2010). Here, although Plaintiffs did not timely respond to Defendants' claims, the Court granted them an extension of time to do so, and their Motion to Dismiss the counterclaims were

filed within the deadline that the Court imposed. *See* ECF Nos. 24 & 25. Accordingly, Defendants' Motion for Default Judgment is denied.[2]

## III. MOTION TO DISMISS COUNTERCLAIM

Plaintiffs have moved to dismiss Defendants' counterclaims based on a lack of subject matter jurisdiction.[3] "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Thus, "[t]he objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235 (2006) (citations omitted). Once a motion to dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(1), the party asserting the claim bears the burden of proving that the court has subject matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D. Md. 2010).

Here, Defendants do not argue that the Court may independently exercise diversity or federal question jurisdiction over the counterclaims.[4] *See* ECF No. 29. Rather, they contend that jurisdiction is proper under 28 U.S.C. § 1367(a), which grants federal district courts supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ." *See* ECF

---

[2] Additionally, Defendants' Motion suffers from a procedural defect: they failed to move for or obtain a clerk's entry of default—a necessary prerequisite to obtaining judgment by default—before filing their Motion for Default Judgment. *See Structural Concrete Products, LLC v. Clarendon Am. Ins. Co.*, 244 F.R.D. 317, 328 (E.D. Va. 2007) ("Before the plaintiff can move for default judgment, the clerk or the court must enter default." (citations omitted)).

[3] Because the Court agrees with Plaintiffs that it must dismiss the counterclaims for lack of jurisdiction, it need not reach Plaintiffs' additional argument that the counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 25-1 at 12–14.

[4] Because Defendants failed to respond to Plaintiffs' argument in this regard, they have conceded the issue. *See McKeel v. United States*, 178 F. Supp. 2d 493, 504 (D. Md. 2001) (noting that a party conceded an argument by failing to respond to it).

No. 29 at 1. In cases such as this, "where neither diversity nor federal question jurisdiction exists over [a] defendant's counterclaims, the counterclaims' status as 'compulsory' or 'permissive' determines whether the court has jurisdiction over them." *Williams v. Long*, 558 F. Supp. 2d 601, 602–03 (D. Md. 2008) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," whereas a permissive counterclaim does not. *See* Fed. R. Civ. P. 13(a)–(b). A compulsory counterclaim is, therefore, "'within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required.' By contrast, a permissive counterclaim that lacks its own independent jurisdictional basis is not within the jurisdiction of the court." *Williams*, 558 F. Supp. 2d at 603 (quoting *Painter*, 863 F.2d at 331). This is so because, although a federal district court may exercise supplemental jurisdiction over counterclaims that "are so related to [the original] claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367, permissive counterclaims, which by definition do not "arise[] out of the [same] transaction or occurrence" as the original claims, cannot be said to "derive from a common nucleus of operative fact" in order to justify the court's exercise of supplemental jurisdiction. *Williams*, 558 F. Supp. 2d at 603 n.1.

The United States Court of Appeals for the Fourth Circuit has suggested that, to determine whether a counterclaim is compulsory, a court should consider four inquiries:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Painter*, 863 F.2d at 331. Not all of these questions need to be answered in the affirmative for a counterclaim to be compulsory, however. "Rather, the tests are less a litmus, more a guideline." *Id.*

In this case, the Court cannot answer any of the four inquiries in the affirmative, and, accordingly, the Court concludes that the counterclaims are permissive and must be dismissed. First, the issues of law and fact raised by Defendants' counterclaims are not "largely the same" as those raised in Plaintiffs' action. Plaintiffs' action alleges that Defendants violated the FLSA, the MWHL, and the MWPCL by failing to pay Plaintiffs minimum wage and overtime for their work as laborers with ABR. *See* ECF No. 1. By contrast, Defendants' counterclaims assert fraud and unspecified causes of action seeking recovery for damage to ABR property. *See* ECF No. 16 at 12–15. The only connection between Plaintiffs' claims and Defendants' counterclaims is the existence of an employment relationship between Plaintiffs and Defendants. The legal issues raised by the wage and hour laws are distinct from any issues regarding Defendants' allegations of fraud and property damage. And as the Court in *Williams* explained, "[f]ederal courts have been reluctant to exercise supplemental jurisdiction over state law claims and counterclaims in the context of a FLSA suit where the only connection is the employee-employer relationship." 558 F. Supp. 2d at 604 (citing cases from multiple jurisdictions wherein courts held that employment relationship alone was insufficient to justify supplemental jurisdiction over state law claims); *see also Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010) ("Generally speaking, courts have been hesitant to permit an employer to file counterclaims in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused." (footnote omitted)); *Wilhelm v. TLC Lawn Care, Inc.*, No. CIV.A. 07-2465-KHV, 2008 WL 640733, at *3 (D. Kan. Mar. 6, 2008) ("Because defendant

relies solely on its employer-employee relationship with plaintiffs to support supplemental jurisdiction, and does not identify a more specific factual connection between its counterclaims and plaintiffs' FLSA claim, the Court cannot find a common nucleus of operative fact between the causes of action . . . .").

Second, res judicata would not bar subsequent litigation on Defendants' counterclaims. Under Maryland law, res judicata is applicable where (1) there is a final judgment on the merits in a previous litigation, and (2) "where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *Boland v. Boland*, 31 A.3d 529, 569 (Md. 2011). Here, presumptively the parties in any subsequent litigation would be identical and this Court assumes that it will eventually issue a final judgment on the merits in this case. But it cannot be said that Plaintiffs' wage claims "are identical or substantively identical" to Defendants' counterclaims. *See, e.g., Ramirez v. Amazing Home Contractors, Inc.*, No. CIV. JKB-14-2168, 2014 WL 6845555, at *3 (D. Md. Nov. 25, 2014) (dismissing defendant's counterclaim for fraud in FLSA action where the court's resolution of plaintiff's wage claims would "have no impact on [defendant] if it chooses to pursue a subsequent fraud claim"); *Williams*, 558 F. Supp. 2d at 605 (dismissing breach of contract and breach of fiduciary duty counterclaims in FLSA action, even though counterclaims depended on whether plaintiff was an employee or joint venture partner in business, an issue that would need to be resolved in the FLSA action).[5]

---

[5] Although Defendants argue that the Court's determination as to whether Plaintiffs were independent contractors or covered employees under the FLSA "serves as a potential bar to any claim for damage of the [employers'] property," ECF No. 29 at 3, the Court in *Williams* addressed a similar argument and concluded that the employer's counterclaims were permissive, rather than compulsory. 558 F. Supp. 2d at 605–06. Although *Williams* is not binding on this Court, the Court is nevertheless persuaded by its conclusion, which, notably, Defendants failed to address in their opposition to Plaintiffs' motion.

The Court also concludes that the third and fourth *Painter* inquiries, which respectively address the degree of overlapping evidence and the logical relationship between the claim and counterclaim, counsel toward a conclusion that Defendants' counterclaims are permissive only. Plaintiffs' wage and hour claims will likely focus on evidence demonstrating the hours they worked and Defendants' failure to pay them for all of those hours. Conversely, the evidence surrounding Defendants' counterclaims will presumably focus on the documents that Plaintiffs signed using purportedly false social security numbers and testimony or documentary evidence regarding the vehicle accidents. The only connection between Plaintiffs' claims and Defendants' counterclaims is Plaintiffs' employment status. This connection alone is insufficient to conclude that the counterclaims are compulsory. *See Williams*, 558 F. Supp. 2d at 606 (finding no "logical relationship" where "plaintiffs' claims and defendant's counterclaims do not relate to one event or issue"); *Ramirez*, 2014 WL 6845555 at *4 ("[T]he only logical relationship between [plaintiff's] claims and [defendant's] counterclaim is the parties' employee-employer relationship. This connection alone, however, does not justify labeling the counterclaim as compulsory.").

Thus, the Court concludes that Defendants' counterclaims are not compulsory because they do not "arise[] out of the [same] transaction or occurrence" as Plaintiffs' claims. Fed. R. Civ. P. 13(a)(1). Plaintiffs' Motion to Dismiss is therefore granted.[6]

## IV.     MOTION FOR SUMMARY JUDGMENT

Finally, Defendants move for partial summary judgment and ask that the Court declare that Virginia law controls the question of whether Plaintiffs are covered employees under the

---

[6] In opposition to Plaintiffs' Motion, Defendants also sought leave to amend their answer and clarify certain aspects of their counterclaims, specifically, to state what causes of action justify recovery for the property damage claims, and to indicate that Virginia law should apply to all counterclaims. *See* ECF No. 29 at 6. Defendants did not argue, however, that amendment could cure any jurisdiction defect. Because amendment would be futile, the Court denies this request.

FLSA or independent contractors who are exempt from such provisions.[7] *See* ECF No. 26. In support of their motion, Defendants rely on contracts signed by Sigala, Flores, and Wong, which purport to show that Plaintiffs were independent contractors for ABR, rather than employees entitled to overtime pay.[8] ECF Nos. 26-1, 26-2 & 26-3. In response, Plaintiffs argue that federal law governs the determination of whether Plaintiffs are employees covered by the FLSA, and, accordingly, that Defendants' request that the Court apply Virginia law is baseless. ECF No. 30 at 5.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (citing Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

---

[7] According to Defendants, if Maryland law controls, the "independent contract agreements" that Plaintiffs signed could not control the determination of whether they were, in fact, independent contractors because, in Maryland, a "special form" must be completed "in order to constitute a valid independent contractor agreement." ECF No. 26 at 3; *see also* Md. Code Ann., Lab. & Empl. §§ 3-914(b)–(c) (requiring employer to provide individuals classified as independent contractors with written notice of such classification, including "an explanation of the implications of the individual's classification as an independent contractor . . . rather than as an employee").

[8] Specifically, the contracts state that each Plaintiff had been "retained as an independent contractor for ABR . . . for the work or project during his/her job performance" and explain that, as such, Plaintiffs were not entitled to health or life insurance, retirement benefits, or unemployment insurance. The contracts further indicated that ABR would not deduct any taxes from Plaintiffs' pay, and that a Form 1099 would be issued at the end of the tax year. *See* ECF Nos. 26-1, 26-2 & 26-3.

What is notable about Defendants' Motion is that it does not ask that this Court determine the crucial question of whether Plaintiffs are, in fact, employees covered by the FLSA, or independent contractors. Rather, they ask that Virginia law control this question because Plaintiffs signed "independent contractor agreements" with ABR in Virginia, and, according to Defendants, under Maryland choice of law rules, Virginia law would control the interpretation of those agreements. *See Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 521 n.16 (D. Md. 2004) ("[U]nder Maryland choice-of-law rules a contractual claim . . . is governed by the law of the place where the contract is made, which is the place where the last act required to make a contract binding occurs." (citation omitted)). The problem, however, is that Plaintiffs' claims are statutory, rather than contractual, in nature. Even if Virginia law controlled the interpretation of the agreements, that fact alone would not be determinative in deciding the legal issue which Defendants contend is the dispositive issue in this case, *i.e.*, whether Plaintiffs were employees or independent contractors of ABR. *See* ECF No. 26 at 3. Indeed, whether Plaintiffs were employees as that term is defined in the FLSA is a question to be governed by the FLSA itself and is a matter of federal law. *See* 29 U.S.C. § 203 (defining the term "employee" as "any individual employed by an employer," subject to certain exceptions).

This Court recently addressed a somewhat similar issue in *Astorga v. Castlewood Consulting, LLC*, No. GJH-14-4006, 2015 WL 2345519 (D. Md. May 14, 2015), an FLSA case in which the plaintiff had signed a contract in which he agreed that he was an independent contractor and "[would] not represent [himself] to be an employee . . . ." *Id.* at *1. The defendants filed a counterclaim to the plaintiff's wage claims alleging that the plaintiff's initiation of the lawsuit was a breach of their contract. *Id.* The Court denied the plaintiff's motion

to dismiss the counterclaim, but noted that it was "express[ing] no view as to [p]laintiff's status as a covered employee or an independent contractor" because "the simple fact that [p]laintiff signed an independent contractor agreement does not automatically mean he is an independent contractor." *Id.* at *3; *see also Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983) ("[T]he fact that the plaintiff welders in this case signed contracts stating that they were independent contractors, while relevant, is not dispositive."). Rather, to determine whether an individual is an employee or an independent contractor under the FLSA, the Court must look to the "economic realities" of the relationship between the worker and the employer by analyzing the six factors discussed by the Fourth Circuit in *Schultz v. Capital International Security, Inc.*, 466 F.3d 298 (4th Cir. 2006):

> (1) [T]he degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.* at 305. Defendants have not argued the extent to which the contracts Plaintiffs signed would factor into this test. But, in any event, as the Court indicated in *Astorga*, the determination of whether Plaintiffs fall into the statutory definition of "employee," is one best made after discovery has been completed. *See Astorga*, 2015 WL 2345519, at *4; *see also Zamora v. Washington Home Servs., LLC*, No. 11-CV-00831 AW, 2011 WL 6297941, at *2 (D. Md. Dec. 15, 2011) (noting that question of whether an individual is a covered employee under FLSA is a "fact-intensive" inquiry). Ultimately, because the question is answered through an analysis of the FLSA and not interpretation of the contract, to the extent that Defendants argue that Virginia law

11

must control whether Plaintiffs were covered employees under the FLSA, their Motion must be denied.[9]

This conclusion does not end the Court's inquiry, however, because it appears that Defendants also seek a judicial determination that Virginia law applies to these contracts so that they may avoid liability under the MWPCL. *See* ECF No. 26 at 2–3. But the Court fails to see how any such choice of law determination could possibly be relevant in this case in light of *Cunningham v. Feinberg*, 107 A.3d 1194 (Md. 2015).[10] In *Cunningham*, the Court of Appeals of Maryland considered whether the doctrine of *lex loci contractus*—the choice of law doctrine that provides that the law of the place where the contract was made generally controls the construction and interpretation of a contract, absent a strong Maryland public policy to the contrary—would apply to preclude application of the MWPCL where the plaintiff employee sought to recover unpaid wages from his former employer, a Virginia law firm. The plaintiff in that case had signed an employment contract, which dubbed the plaintiff an "independent contractor," and the trial court concluded that, because the contract was a "Virginia contract," the MWPCL did not apply and accordingly dismissed the plaintiff's claim. *Id.* at 1199. The Court of Appeals, however, explained that "*[l]ex loci contractus* is not implicated in all contract-related disputes," *id.* at 1205, and noted that neither party disputed the validity or enforceability of the employment contract, nor did they ask that the court interpret or construct any express term of

---

[9] Because the MWHL is Maryland's state parallel to the FLSA, the Court's conclusion respecting the FLSA applies with equal force to Plaintiff's MWHL claims. *See Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) ("[T]he requirements of [the MWHL] mirror those of the federal law[.] Thus, [Plaintiff's] claim under the MWHL stands or falls on the success of [his] claim[] under the FLSA." (citations and internal quotation marks omitted)); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 267 (D. Md. 2014) ("Courts analyze employee status under the MWHL using the same six-prong 'economic realities' test as the FLSA.").

[10] Plaintiffs argue that *Cunningham* is inapplicable because that case involved interpretation and application of choice of law provisions in contracts. ECF No. 30 at 11. But the court in that case specifically noted that the contract at issue there did not contain a choice of law provision. *See Cunningham*, 107 A.3d at 1205–06 (2015) ("In the present case, the Agreement between the parties contains no choice of law provision. As the parties did not determine for themselves a jurisdiction's law to apply, should there be a dispute over the validity and enforceability of the contract, we would apply Virginia law as determined by *lex loci contractus*.").

the contract, *id.* at 1206. Rather, the dispute in *Cunningham* revolved around what the plaintiff was to be paid, an issue on which the contract was silent. *See id.* ("The contract is silent largely as to the recovery of unpaid wages . . . . There is nothing in the Agreement relevant expressly to the payment of wages to interpret or enforce."). Thus, *lex loci contractus* did not resolve the dispute, and the Court of Appeals instead adopted the reasoning applied by the Court of Special Appeals of Maryland in *Himes Associates, Ltd. v. Anderson*, 943 A.2d 30 (Md. Ct. Spec. App. 2008). In *Himes*, the court noted that the MWPCL defines an "employer" as any person who "employs an individual in the State [of Maryland]" and therefore concluded that the MWPCL "covers the situation in which a company outside of Maryland directs its employee to go to a work site in Maryland." *Id.* at 48. Finally, the court in *Cunningham* went on to explain, "[i]n a nifty bit of considered dicta," that, even if *lex loci contractus* applied, it would not preclude a claim for relief under the MWPCL, because "the MWPCL represents a strong public policy of Maryland" and that, therefore, the Virginia employment contract did not preclude the employee's recovery under the MWPCL. 107 A.3d at 1201, 1218.[11]

Here, too, neither Plaintiffs nor Defendants are asking the Court to resolve any issues of construction or interpretation regarding the contracts that Plaintiffs signed. Thus, even assuming Defendants presented sufficient evidence to demonstrate that the contracts were formed in Virginia,[12] application of *lex loci contractus* would not resolve any dispute before the Court. And

---

[11] *See also Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 630–34 (D. Md. 2015) (explaining that federal district court was bound by *Cunningham's* "clear exposition of the law" and concluding that MWPCL represents "strong public policy" of Maryland which overrode New Jersey choice of law provision in contract where defendant "ha[d] not argued that New Jersey has any fundamental interest in the underlying substance of the dispute . . ."). Although Defendants suggest that *Blanch* "added a slight twist" to *Cunningham*, in that it considered the competing states' interests in the choice of law analysis, Defendants have failed to articulate any competing Virginia policy that might override Maryland's strong public policy reflected in the MWPCL. *See* ECF No. 26 at 3–4.

[12] Defendants provided scant evidence to support their position that, under *lex loci contractus*, Virginia law would apply to interpret the contracts at issue. In support of their Motion, they attached only the contracts themselves, which indicate that Plaintiffs agreed that they were signing a "release of benefits" and that the documents constituted a contract between each Plaintiff and ABR "in the state of Virginia." *See* ECF Nos. 26-1, 26-2, 26-3. Although

13

even if *lex loci contractus* was relevant, the "strong public policy" embodied in the MWPCL would override the choice of law doctrine. *See Cunningham*, 107 A.3d at 1218. This case involves issues purely of statutory interpretation, and, on those issues, it appears Defendants prefer to await resolution until after discovery has been completed. *See* ECF No. 26 at 5 (asking that the Court "leave open the question of whether missing pay should be determined under the provisions of Maryland code until Plaintiffs produce some evidence that they did, in fact, work on jobs in Maryland . . ."). ECF No. 26 at 5. Accordingly, Defendants' Motion for Partial Summary Judgment, ECF No. 26, is denied.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Default Judgment, ECF No. 19, is **DENIED**; Plaintiffs' Motion to Dismiss Defendants' counterclaims, ECT No. 25, is **GRANTED**; and Defendants' Motion for Partial Summary Judgment, ECF No. 26, is **DENIED**. A separate Order follows.

Dated: April 21, 2016

GEORGE J. HAZEL
United States District Judge

---

Flores and Wong indicated that they lived in Virginia when they signed the contracts (Sigala did not list a city or state along with his street address) it would be a close question whether this evidence is sufficient for Defendants to satisfy their burden on a summary judgment motion to demonstrate that there is no genuine dispute that the contracts were, in fact, entered in Virginia. Because, at least at this stage, it seems that any such determination would be irrelevant to Plaintiffs' statutory claims, the Court need not resolve that question.